Alright, we're ready to hear argument if the parties are in Lucero v. Early. Mr. Day, whenever you're ready. Please the court. My name is Sean Day and I represent Kenneth Lucero, the plaintiff and appellant in this case. As the court knows, this is the same policy that was at issue in Ross. It's a buffer zone around a circus venue wherein protesting and leafleting were not allowed. Ross was a 2014 decision. This case is different factually. It's different legally. It's factually different because there were two factual stipulations in Ross that were limited to Ross. One stipulation was that the policy was generally applicable, and that is contested here. And this court found that that factual stipulation determined the level of scrutiny that was applicable in Ross. Sorry to stop you so early, but when you say that's contested here, what is it that you've alleged about how the policy is not generally applicable? Well, it's not content neutral on its face because the subject line states circus protesters, and it says the purpose of the policy is to allow First Amendment opportunities for circus protesters. Have you alleged in your complaint that putting to one side the selective enforcement allegation, but so is it your allegation that this policy does not apply generally to leafleting, that before the police decide whether they're going to move someone along, they have to look at the leaflet to see if the leaflet is about a circus versus, say, protesting the war in Afghanistan? Well, we don't have to go that far. Are you alleging that? Because I don't see it in your complaint. We're alleging discriminatory enforcement. There is a claim of discriminatory enforcement. I understand, but are you alleging that the content of the policy requires a police officer enforcing it or applying it to look at what is written on a leaflet before the police officer? It certainly could be read that way, yes. And count one of the complaint—I'm sorry, count two of the complaint challenges the policy as applied to leafleters. I'm just trying to find a handle on whether we have a factual dispute in front of us about whether or not a police officer applying this policy, assuming that the police officer is not doing selective enforcement, just applying the policy. Does that police officer have to read what's written when someone's handing out a leaflet before he or she tells someone whether they need to move into the protest zone? Well, in addition to the facial challenge, we do have a Monell challenge based upon the custom. I'm sorry, maybe I'm just missing the question. Yeah, I feel like I wish I could ask it more clearly. If there are two leafleters, two leafleters standing in front of the circus, and one of them is handing out a circus, like, be nice to circus animals leaflet, and the other one is handing out a U.S. out of Afghanistan leaflet, is it your view that a police officer sort of properly enforcing this policy is supposed to move the circus person into the separate spot and leave the Afghanistan person there? I don't know that I would say supposed to. I would say that the policy refers to circus protesters, and if one reads the policy in one way, it certainly permits the officer to determine his or her action based upon the content of the leaflet. And that's because of the way that the policy is written on its face, referring specifically to circus protesters in both the subject and the body of the policy. Well, it refers to Ringling, specifically to the Ringling Brothers Circus, which is no longer in business. So assuming you're correct, how is your argument not moot? Well, there was still a constitutional violation in 2010 when this happened, when Mr. Lucero was arrested. We still have that claim, and it was at issue when the complaint was filed. I don't believe it presents. But it's not at issue now. It couldn't be going forward either. I don't believe we have an injunctive relief claim, so I don't believe that's at issue. I don't think that the court needs to decide that one way or the other because he was arrested. He does have a claim. His constitutional rights were violated in 2010. Whether or not if the same thing happened in 2017, whether it's relevant or not, I don't think that applies here. We're not seeking injunctive relief. We are seeking the constitutional violation, Section 1983 damages claim. So we contend it's different factually. There was the stipulation that the policy was generally applicable. It's contested here. The second stipulation was that there was no Monell custom of discriminatory enforcement, and that is contested here as well. And on both of these issues in Ross, Judge Motz found that there was a jury issue, both as to the Monell claim and as to the individual claim against Officer Early. What's your strongest argument that the protocol was content-based? The decision in Reed dictates how we're to do that. Also, the decision of Cahaley recognizing that the content-neutral analysis has changed in light of Reed. Now you just look at the face of the policy. The face of the policy here, the subject says circus protesters. That's not what Reed means. If the policy in McCullen had been attached to an email that said, we have a problem with abortion protesters, and then you have the same policy, that doesn't make it content-based. That wouldn't have changed the outcome in McCullen. The fact that a speech policy is issued and motivated by a problem that is caused by a particular kind of speech, that doesn't make it content-based under Reed. I don't understand your argument. What makes it content-based under Reed is whether you have to read the leaflets before you decide who gets to stay in front of the circus and who doesn't. It doesn't matter why the state adopted the policy or the city. I mean, everybody knew in McCullen, right? That was the whole argument in McCullen. This whole thing is about anti-abortion protesters, and the court was very clear. It doesn't matter. That doesn't make it content-based. The difference between this case in McCullen was in McCullen, the speech restrictions applied to a specific venue at which abortion protesters wanted to protest. In this case, we do also have a specific venue at which circus protesters wanted to protest, but we have the additional factual distinction here that we have a policy that is written on its face to apply only to circus protesters. No, it's not. It applies to protesters. The operative provisions apply to protesters. Then there's some other language that makes clear that the genesis for this policy was a concern about circus protesters, but that's exactly the facts in McCullen. There was an entire legislative history. People got up on the floor of the State House and said, we have a problem with anti-abortion protesters. It's the exact same thing, and the court said that's content-neutral. I would respectfully disagree. The subject line says, quote, circus protesters, and the body of the email refers to people wishing to express their views. I agree. The legislative history is really solid that these people were particularly concerned about circus protesters. I would not challenge that. But I don't understand what that has to do with the operation of the policy, and that's what Reed tells us to look at. It does application of the policy turn on the content of the speech. Okay. Well, I'd like to, if I may, move on to the narrow-tailing analysis. I don't know that I can satisfy the court on the content-neutrality analysis. I apologize. McCollin did change the narrow-tailing analysis and further impacts the analysis of alternative channels of communication in this court in Reynolds. I recognize that McCollin abrogated this court's prior law on content, I'm sorry, on narrow-tailing. Under McCollin, first of all, we have the substantial interest test, which requires closer attention. This court recognized in footnote four of Reynolds that where there is no obvious relationship between the restrictions and the government's stated interest, the government needs to present evidence that the regulation furthers its interest. And the district court in Ross number three found, quote, a clear disconnect between the policy and its purpose. That's at 899 F sub 2nd 423. And if this court agrees with the district court that there's a clear disconnect between the policy and its purpose, then this court should find that there is a lack of evidence that the policy furthers its stated interest. McCollin also changed the narrow-tailing analysis and affirmed everything that Ross had argued. Leafletting is different. Leafletting is special. And you cannot post in McCollin, just tell someone to stand 15 feet away and shout at people. If that's what they want to do, that's fine. If you want to protest, you can still protest. But if someone wants to approach and be within arm's reach and conversational voice and offer a leaflet, you cannot tell them to just stand over there and hold a sign and they can see and hear you, and that's good enough. And frankly, everything that this court wrote in Ross, you can look in McCollin and find the Supreme Court stating the opposite. And I cite some of that in my summary of argument page 28 of my brief. In McCollin, the Supreme Court also recognized that you must present evidence that the government tried less restrictive means. They did not do so here. Do you feel like that means that the first thing the government does to respond to a problem like this is per se unconstitutional? You have to try a bunch of things first? If there are less restrictive alternatives available, then I would say yes. So you think that after McCollin, the rule is that the government has to use the least restrictive means possible? Because I thought McCollin went out of its way not to disturb the rule that that is not true. So I don't understand how to square up your argument with the continued rule that the government is not obliged to use the least restrictive means possible. Well, I don't know. I suppose it could depend on how much common sense and obviousness there is between what you try first and the alternatives that were available, that were readily available. Certainly in Reynolds, this Court was quite clear that they did not try less restrictive alternatives. There needs to be evidence of efforts. But there might be an exception if it's just so obvious and common sense, I suppose. But in this case, we have a very wide area. We have a Hopkins Plaza. It covers a third of an acre where the box office is. We have a 29-foot wide sidewalk. You can see on page 73 of the joint appendix, Mr. Ross in 2009 standing afar from the people, a distance. And then on 75 and 76, standing within about nine feet inside the buffer zone and actually able to reach the people. This Court also wrote in Ross that Mr. Ross being diminished in his ability to leaflet did not state a constitutional violation. In McClellan, the Supreme Court stated that being substantially reduced in both your quantity and the quality of your ability to reach people and to leaflet people is a constated constitutional claim. And certainly in this case, we have stated that not only was there a reduced ability to reach the circus attendees, where you could reach about 5 percent of the circus attendees from this distance to be able to be within an arm's reach and conversational voice. Can I just ask you a question about 5 percent? What's that compared to? What was the sort of percent? Do you know what I mean? In a vacuum, what percent of circus attendees could your client reach if there wasn't a buffer zone? Potentially access to 100 percent. Can you get 100 percent of those people? Well, access to 100 percent. I mean, he's one person. If you have multiple leafleters, you can certainly have access to anyone who's entering the arena, as opposed to 5 percent. Sure, because to get into the circus venue, you would have to go into the buffer zone. So certainly you could be reached prior to getting into an entrance or to the box office area. I'm just trying to figure out how you would get to 100 percent coverage without creating a huge pedestrian problem. Would there be a line of people that you'd have to push through? How could you possibly get to 100 percent? Well, it's having access to 100 percent rather than having access to 5 percent. It's no different than what was going on in McClellan. In Bruny, in the Third Circuit, they had a 15-foot buffer zone, which was previously upheld by the Third Circuit. And then in Bruny, they took another look at it and said, okay, post-McClellan, we got it wrong. And in that case, they remanded for further factual findings. They found it rather incredible that someone would not be able to state at least a factual issue at the motion-to-dismiss stage, and they remanded for further findings. In this case, we don't really need that. We have a lot of factual findings as to the impact on the leafleting, as to the lack of effort to find an alternative, less restrictive means. Officers Weintraub and Early, they went straight to Linda Barclay after having tried the BPD legal counsel the year before, and he rejected them. And they went there, and she just drafted it up without consideration or attempts to do any alternatives. I see my time is up. Thank you. Thank you. Mr. Potter. Thank you, Your Honor. May it please the Court, Stephen Potter represent the respondents in this case. This panel should not overrule the Court's decision, Ross v. Early, which upheld an identical time, place, and manner regulation of protected activity in a public forum as narrowly tailored. But what about the fact that in Ross there was a stipulation that the protocol was generally applicable? Doesn't that make a big difference? No, Your Honor. I think that the generally applicable issue is actually a red herring. So if we're looking at this in the context of whether something is too broad or is it too narrow, if it's the question of being too broad, for example, we've got that problem arose in McClellan, right? So it applied to many locations, but it was overbroad. It was too generally applicable. It applied everywhere. Just like Reynolds, it applied many places, but it burdened more speech than was necessary because the congestion problems arose once a week in one city at one clinic. And in Reynolds we had something that was generally applicable to all streets and all islands throughout the city. So that was the problem. But what we didn't know, and McClellan did tell us, that the targeting, so-called, is really actually not a problem. In fact, the court said something to the effect that when selecting among various options for combating a... Didn't the stipulation take away what the court needed to determine? In here there's not a stipulation like that. No, I think that the... So the theory was that instead of applying a regular time, place, amount of regulation, intermediate scrutiny, somehow maybe it could be subjected to heightened scrutiny, right? And that it would be treated like an injunction because it was somehow targeted. And that would be targeted in this narrow tailoring context. And I think that, as the court pointed out, it is content neutral. So when we look at the tailoring, look at the so-called targeting, in the narrow tailoring context now, we know from McClellan that says, when selecting among various options for combating a particular problem, local government... Well, we might know that from McClellan now. Yes. But we still have to decide, the court still has to decide that here because it wasn't stipulated to here in the way it was in Ross, right? No, you're right. You might be right about McClellan, but the court below still needs to reach that issue, right? I'm not sure that they do. I think that they just treated it as a regular regulation of protected activity. The question was this idea. The court in Ross said it is a hotly contested, I can probably quote this, a hotly disputed issue of material fact. Whether this policy, and I'm not talking about narrow tailoring, but whether this policy applies generally to speech, or whether it only applies to circus-related speech, whether you're only going to be told to move along if you're leafleting about the circus. The district court said that was a hotly disputed factual issue. It was resolved in that case because the parties stipulated, okay, fine. It actually applies to all speech, not just circus-related speech. So there was a stipulation, but there's no stipulation in this case. So what do you want us to do about that factual question, which is determinative of whether this is content-based or content-neutral? Yes, Your Honor. So I think that problem is that it was not, when we were considering whether it was generally applicable or targeted, it was not a question of whether it was in the application in terms of whether we're evaluating the content. It was whether it should be considered generally applicable as a non-legislative. I understand that the legal point to which this factual question was connected in Ross was different. It was about should we treat it as an injunction or should we treat it as a regular regulatory ordinance. That's all gone now, because now it turns out that the question, the answer to that factual question determines whether or not it's content-based under READ. If this only applies to circus-related speech, then now it's content-based because of READ. But the question doesn't go away. Well, I think that the question... We can talk about the content-neutrality issue. That's what I'm trying to do. But I don't think that whether it was generally applicable or targeted was actually a question relating to its content-neutrality. Not before READ it wasn't, but now it is. We agree that under READ, if this policy only applies to leafletting about circuses, then it's content-based. So my question for you is, does it only apply to leafletting about circuses? No, absolutely not. Okay, but that was at one point a factually disputed issue. What has resolved it for us? No, I think that it was actually not a factual issue because there was ample evidence in the record, including the film, of us enforcing it against everybody that was present, and that was never understood that way. Was anyone convicted if they passed out something other than a protest? I mean, if Mr. Lucero said, look, I'm not protesting. My pamphlet says animals never had it so good,  and wouldn't the police officer have to let him go? The court couldn't convict him, could he? He's not a protester. No one was considering whatever it said in the leaflet. It was simply a question of, are they engaged in protected activity within the dedicated channel of the sidewalk that was set aside for pedestrian traffic and public safety? No one ever looked at any leaflets. They weren't concerned with whatever it said. It was simply whether they were offering leaflets or they were engaged in anything. It was simply a question of reserving space for safety. But what if people were considering whether to protest or maybe to speak out in favor of the circus? And they look at the policy. So they don't bother because they want to protest. They say, well, I'll go to jail if I protest. But the person who's for the animals being in the circus can go down without fear of prosecution. No, Your Honor, it was simply a question of whether somebody Look at what the policy says. I understand. Circus was simply a time and a location, not a message or a topic. That means something. It doesn't mean that we're in favor of anything or we're neutral. It means we are against something. I don't see why this is not just viewpoint discrimination. Well, Your Honor, it was never understood to be viewpoint discrimination. It was never enforced as viewpoint discrimination. Well, I look at what the words say. The language and the way it was enforced was that it was considered to be applied at that location at that time to everyone that was engaged in It was never been enforced against anyone besides animal rights activists. Yes, Your Honor. And then the record reflects that it was forced against religious people. And in fact, I think there's photographs of it, still shots of the new Israelites that were lining up to engage in their proselytizing in the middle of the section. And the security immediately ran out there and told them, please move your activity outside the line of brick pavement and you can do it there because we've reserved this area for pedestrian safety and for traffic flow. The religious protesters, I guess I see, but I do have the same concern as Judge Moon. Putting to one side the circus language in the email, the operative leaflet. Maybe they're just selling something. How do you know it's a protest? And could you really enforce this against someone who is, say, handing out commercial leaflets who would say, what are you talking about? I'm not protesting. I understand the court's trouble with the imprecise language in the email. But it was simply, I guess, a shorthand for expressive activity. It's precise, actually, not imprecise. Protesters. They use the word protester simply as people, and I think Ms. Barkley's testimony was anyone engaged in expressive activity within this area, and that's why it was applied. And that's why no one ever looked at any leaflets or anything like that. But I think that in terms that the, in terms of getting back to the question of whether something is generally applicable or tailored, I guess,   at the time that issue was, I guess, generated, it was simply a question of whether it could be treated more like an injunction and be subject to heightened scrutiny. And here, in fact, we now know that maybe all we did was limit no more speech than was necessary based on the fact that this Court's found that we responded precisely to exactly what the problem was. But looking at the content neutrality part, leafleting, the way the regulation operates is that the leafleting, it depends not on what the leaflet says, but simply from where Mr. Lucero is offering it. It doesn't say, oh, you must review the content of the message first. It's simply anyone engaged in expressive activity or protesting of any type for any issue has to be moved to outside a certain area. So they're describing locations, the places where some protected activity may occur. Can I just? Sure. The District Court says, in Ross, whether the police allowed leafleters, vendors, and other demonstrators in the restricted areas while confining circus demonstrators to the designated areas is a decisive and fervently disputed fact. I think it is still decisive under Reed. It now goes to a different point, not this Madsen issue, but now that is dispositive under Reed as to whether or not it's content-based. I'm trying to figure out if there's some sense in which it is no longer disputed. And I was trying to, I still have questions about whether it's actually, there's an allegation one way or the other in the complaint. But I don't understand how you, oh, and then the court goes on to say the fact that the protocol on its face appears generally applicable is not determinative. That, to me, also seems to be, remain true. So how can we do anything but send this case back to this District Court, who will be so unhappy to see it again, and say, now you have to make this factual determination? Well, one way is that the application, the regulation's specific application to the location is actually not a problem, because under McCullen, they said... That's a different question. No, I'm talking about the content neutrality part of it. Okay. Because that's what you're asking, right? Yes. So under McCullen, they said, with regard to content neutrality, they said there are no grounds for inferring because it applied to abortion clinics. Didn't they hit content-based simply? And here we have simply because it's applying at the circus. That's not what the District Court said, that this is a factual dispute because it applies only at the circus. He said it's a factual dispute because, and then he lists all the stuff in the record, the affidavit of the person who says the youth group got to keep going, people who say that they saw vendors in the area. That's, he's saying on the facts of this case, there's a question as to whether this only applies to circus-related speech or not. Well, I guess this Court actually found that there was nothing to suggest, at least in terms of from 2004 to 2009, that there was nothing to suggest that Officer Early purposely targeted leafleters because they were protesting  at the location any other time than during the circus, correct? Your Honor, I think... And protesters around the Baltimore Arena during the Ringling Brothers Circus. I think that there's also testimony that the way it was understood was that this would be the plan whenever there were protesters at the arena. Yes, there is no more protesters at the arena because of the physical, geographical restrictions of the arena and the sidewalk, basically that it doesn't meet code or that it's out of date. It was built in 1964, and because of the bus stops, because of the rush hour demands of the area, they would go to this particular set of regulations. So all of these questions and issues and arguments you're making are still in dispute because they were not resolved in Ross, right? There was no determination in Ross with regard to content neutrality. That is true. That is what this Court found. And that was because of the stipulation, correct? No, Your Honor, just because the parties didn't dispute it. It was not. And I think the Court, I think that you added... Did the parties dispute it in this case? Well, I don't know. I don't view it as... I view it as content neutral. Mr. Day may view it differently. He does view it differently, so clearly there is a dispute. But I think that the question is... Or we wouldn't even be here. Well, we're here because the District Court thought that it was content neutral and that it had been applied in a content neutral way and that this Court's decision in Ross simply controlled the matter because it was narrowly tailored. It was the same regulation applied from someone doing the same thing in the same location that was generated for the same purposes. And for that reason, that's why the District Court found that it controlled Mr. Lucero's claim as well. But I think that what is significant also is that this Court already found that for the time period of 2004 to 2009, on which Mr. Day relies, that same record, we already know that that has been insufficient to show somehow that it was purposely targeted, so to speak, by officer early or that there were sufficient instances of, numerous instances of similarly situated individuals. We already know that that evidence is insufficient. So really we're left with, well, does it make any difference what happened in 2010? And the presence of one woman that may have been engaged in protected activity or the presence of one circus vendor who arguably is really completely different because they're engaged, one, in commercial speech, but secondly, it's part of their commercial contract with the arena operators to have the use of the arena. The fact that they may have been present at some location, and we don't really have direct evidence of this as to when it was or where they were, but it's certainly an entirely different context. So we really have a very small, finite amount of evidence that would actually be controlling or relevant with regard to whether there was some sort of content-based enforcement or selective enforcement because we already know that the earlier time period has already been reviewed by this court in the context of the other case and made a ruling with regard to that. But to get back to your question with regard to the targeting and the general applicability, I guess that it's become, I guess the meaning has become different from what was originally understood. And so therefore, the reason that we had a stipulation was for a separate purpose, and now the question now becomes whether there's some sort of content neutrality. And I think McClellan does tell us that simply because it's, say, targeted at a specific location or may disproportionately affect speech on a particular subject matter, we now know that that is content neutral. And so if that's where our focus has gone, McClellan answers those issues for us. And so we don't, it's really not a, it really becomes not a relevant issue. Thank you. I just want to start reading from Reynolds. It states that the burden of proving narrow tarreling requires the county to prove that it actually tried other methods to address the problem. It is not enough for the government simply to say that other approaches have not worked. Instead, the government must show that it seriously undertook to address the problem with less intrusive tools readily available to it. It must demonstrate that such alternatives would fail to achieve the government's interest, not simply that the chosen route is easier. And we know, based on Linda Barclay's deposition, that they did not consider, much less try, alternative, less intrusive means to achieve the government's purpose. There was an incident where the policy was allegedly enforced against the new Israelites, and as Judge Motz found, page 422 of Ross Decision No. 3 was somewhat suspicious of that. Judge Motz noted that the officers were aware of the fact that they were being videotaped at that time, and that this was going to be a contested issue. I do see how Judge Motz thought that that was a disputed fact at the time, but I'm still going back to the complaint in the current case and just trying to see if you've really put this question at issue in this case. And let me just, because I think this is really, at least it's very important to me, and I understand in your brief and in your complaint the sort of argument that, look, because this thing, the email references the word circus, it's not content neutral. That's not what I'm looking for. I'm looking for whether you have put at issue that in application this policy requires police officers, as I already said, to sort of look at the content of a leaflet before deciding how to apply it. Not generally applicable in that sense. Not that it says circus, but that as it operates and as it is applied, it only applies to circus- related speech. Is that something you alleged? Well, in paragraph 14 of the complaint, we do state that the policy restricts the use of the sidewalk. This seems to say the opposite by those engaged in protest activities, including leafletting. Oh, I thought it was including leafletting about the circus. Okay. At the circus. This is just at the circus. Paragraph 18, the policy prohibits circus protestors from using the 15 feet of sidewalk as well as the arena. But it doesn't say circus protestors and only circus protestors. I mean, I think it is clear that the policy includes circus protestors, but the question is, is it limited to circus protestors and all other protestors can have at it? Well, I would say to the extent that it is, I hope it's not that, if it's vague in the complaint, it was certainly put at issue in the district court, and it's not part of the appendix, but it is ECF number 38, which was the plaintiff's motion to reconsider dismissal. And that was decided prior to this appeal coming to this court, in which we allege that it is not a content-neutral policy. And that was in section 1A, starting on page 26 of ECF 38, where we put it at issue before Judge Motz and had that argument rejected, and hence we are here on that issue. Perhaps the complaint should have or could be amended to clarify that, but certainly it was before Judge Motz by way of that motion, if not the complaint. And I have no further argument. Are there any other questions? No, thank you. Okay, thank you. Alright, we'll come down and greet counsel, and then we'll be adjourned until tomorrow morning. This Honorable Court stands adjourned until tomorrow morning. God save the United States and the Honorable Court. Thank you.
judges: Stephanie D. Thacker, Pamela A. Harris, Norman K. Moon